**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Wynton Stewart,<br><br> *Plaintiff*,<br><br>v.<br><br>R. Szul, *et al.*,<br><br> *Defendants*. | No. 23 CV 15969<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

  Wynton Stewart, a pretrial detainee, sued various Cook County Sheriff's employees, including Correctional Officers Martinez and Szul, alleging that they used excessive force in handcuffing him during an incident on October 2, 2023 (the "October Incident") in violation of 42 U.S.C. § 1983. Because Stewart was incarcerated when he filed suit, he needed to comply with the Prison Litigation Reform Act ("PLRA"), which demands prisoners exhaust their administrative remedies prior to suing in federal court. 42 U.S.C. § 1997e(a). Martinez and Szul have moved for summary judgment arguing Stewart did not abide by this requirement. The Court agrees and grants the motion.

**I. Local Rule 56.1**

  "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

  Any party, including a pro se litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though employee was pro se litigant"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even pro se litigants must follow procedural rules"); *Parker v. Fern*, 2024 WL 1116092, at *2 (N.D. Ill. Mar. 14, 2024) ("It is well-settled that a plaintiff's pro se status does not excuse him from complying with federal and local procedural rules.").

Here, Defendants filed a Rule 56.1 statement and, as required by Rule 56.2, served Stewart with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." [Dkts. 49, 50.] This latter filing explains what a motion for summary judgment is, and what steps Stewart needed to take to respond to the motion. Notwithstanding these instructions, Stewart failed to respond to Defendants' statement of material facts beyond stating that he objects to them. [Dkt. 53 at 1.] Nor did he file any additional facts. L.R. 56.1(b)(3). Consequently, the Court takes all its facts from Defendants and deems them admitted to the extent they are supported by evidence in the record. L.R. 56.1(e)(3); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

**II.   Background**

As relevant here, Stewart was in custody at the Cook County Department of Corrections ("CCDOC") between August 16, 2023 and October 2, 2023. [Dkt. 49, ¶¶ 1, 8.] Correctional Rehabilitation Worker ("CRW") Robert Jewell was assigned to Division 9 in the CCDOC during the October Incident. [*Id.* at ¶ 9.] That day, Stewart attempted to commit suicide by jumping off the top tier of Division 9. Defendants stopped Stewart and placed him in handcuffs, which gave rise to this case. [*Id.* at ¶¶ 12–13; Dkt. 1 at 5.]

The CCDOC maintains a formal Inmate Grievance Procedure ("Grievance Procedure") that explains the process for filing a grievance. According to the Grievance Procedure, inmates are instructed to complete a grievance form when they have been "injured, harassed, abused, or threatened." [*Id.* at ¶ 16.] These forms are available in each living unit but can also be obtained through the inmate's CRWs or an Individuals in Custody ("IIC") Services staff member. [*Id.* ¶¶ 17–18.] A blank piece of paper can also suffice if an official form is not available. [*Id.* at ¶ 18.]

The Grievance Procedure requires inmates to submit a grievance form within 15 days of the alleged offense. [*Id.* at ¶ 19.] Inmates are instructed to hand completed grievance forms to the CRW or a Correctional Supervisor when they make their daily rounds. [*Id.* at ¶ 21.] If an inmate receives an adverse decision, he has 15 days to appeal. [*Id.*] If his appeal is denied, he has exhausted his administrative remedies and may file a lawsuit. [*Id.*] Put differently, to properly exhaust the CCDOC's administrative remedies, the Grievance Procedure requires inmates to both timely file and appeal their grievance (within 15 days of the offense or decision). These instructions are available on grievance forms and in the CCDOC Inmate Handbook. [*Id.* at ¶ 17; Dkt. 48 at 2–3.]

It was common practice for grievance forms to already be placed in Division 9 at the start of CRW Jewell's shifts, but he also routinely brought extra grievance forms with him. [*Id.* at ¶¶ 11–12.]

2

Stewart admits that he was aware of the Grievance Procedure prior to the October Incident. [Dkt. 53 at 2.] It is undisputed that he filed one before on August 16, 2023. [Dkt. 49, ¶¶ 6–8.] But neither CRW Jewell nor Correctional Officer Cobarii Corbert recall Stewart requesting a grievance form after the October incident and Stewart admits that he did not ask for a piece of paper. [*Id.* at ¶¶ 14–15, 23.] Stewart filed this lawsuit on November 7, 2023 basing his excessive force allegations on the October Incident. [Dkt. 1.]

Defendants now move for summary judgment arguing Stewart failed to exhaust his administrative remedies because he did not submit a grievance about the October Incident prior to filing this lawsuit. [Dkt. 48.]

### III.   Analysis

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The PLRA requires inmates to exhaust their administrative remedies before initiating a federal civil rights lawsuit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) ("[A] suit filed before the prisoner has exhausted these remedies must be dismissed.") (cleaned up). Accordingly, if a correctional facility has an internal administrative grievance system through which an inmate can seek to correct a problem, the inmate must utilize that system before filing a claim in federal court. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

The primary purpose of the grievance system is to put prison officials on notice of an issue so that it can potentially be resolved prior to a lawsuit. *Jackson v. Esser*, 105 F.4th 948, 958–59 (7th Cir. 2024); *see also Rodriguez v. Judkins*, 2020 WL 6273480, at *5 (N.D. Ill. Oct. 26, 2020) ("When a prisoner does not name the parties involved or describe the conduct about which he is complaining, this prevents the prison from addressing complaints prior to suit, which is one of the benefits of exhaustion."). To satisfy exhaustion, a grievance need not necessarily name a prison

3

official by name. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("[T]hat Maddox didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement.").

Stewart admits that he was aware of CCDOC's Grievance Procedure and that he did not file a grievance related to his excessive force claim within the 15-day window, that is, by or before October 17, 2023. [Dkt. 53 at 2 ("yes I was aware of the grievance process…").] The parties only dispute whether the process was unavailable to Stewart. An inmate need not exhaust administrative remedies to satisfy PLRA exhaustion if those administrative remedies are effectively unavailable. *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy is unavailable, for example, when prison administrators thwart the process through "machination, misrepresentation, or intimidation"; the process is "so opaque" as to be "incapable of use"; or it operates as a "dead end." *Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) (quoting *Ross*, 578 U.S. at 643–44).

Stewart argues that the Grievance Procedure was effectively unavailable to him but only for a handful of days following the October incident. He says he asked Corbert, as well as Correctional Officer Brown and Sergeant Valentine, for "assistance with obtaining the grievance" form and tried "to get a grievance after the incident on Oct. 2, 23" between "Oct. 3 to 6," but was told his living unit did not have any forms and no form was provided. [Dkt. 26; Dkt. 48 at 5; Dkt. 53 at 2.] Stewart also explains he could not ask Jewell for a form because the incident happened at night after Jewell's shift. [*Id.* at 1–2.] The Court treats Defendants' competing facts on these points as admitted. But Stewart's argument would fail regardless because he has not identified any administrative obstacle to filing the grievance by the October 17 deadline. Even assuming Corbert, Brown, and Valentine refused to provide the form between October 2 and 6, as Stewart insists, Stewart has not created a factual dispute that he could not have filed a grievance in the days that followed. He does not claim, for instance, that there was any impediment to his filing the grievance on October 7 or October 8, or any other day after October 6 but before the deadline.[1]

On the facts presented, no reasonable jury could conclude that CCDOC's grievance procedures were unavailable to Stewart or that he filed a grievance about

---

[1] Stewart also could have submitted a grievance using a blank piece of paper. He argues that he did not know he could use blank paper and wasn't given a CCDOC Inmate Handbook during his intake that would have notified him of this option. [Dkt. 53 at 2.] Defendants have submitted an IIC affidavit explaining that inmates may use blank paper to file a grievance, but there is no mention of whether Stewart received a copy of the inmate handbook when he entered CCDOC. [Dkt. 49-1, ¶ 7.] The Court need not resolve this factual dispute, however, because it concludes that the grievance process was available to Stewart using the grievance form at least as of October 7, 2023.

4

the October Incident. Because Stewart did not exhaust his remedies, Defendants are entitled to summary judgment. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

## IV. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment and dismisses the case without prejudice for failure to exhaust.

Enter: 23-cv-15969
Date: November 5, 2024

_____
Lindsay C. Jenkins
United States District Judge